# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

SHAWN D. ARNOLD,

      :

    Petitioner,                                         Case No. 3:10-cv-95

      :                  District Judge Timothy S. Black

   -vs-                                           Magistrate Judge Michael J. Newman

WARDEN, Lebanon Correctional Institution

      :

    Respondent.

---

## REPORT AND RECOMMENDATION

---

Pursuant to 28 U.S.C. § 2254, Petitioner Shawn D. Arnold ("Petitioner" or "Arnold") brings this petition for a writ of *habeas corpus*. He was convicted of two counts of murder, two counts of felonious assault, discharge of a firearm, having a weapon while under disability, and tampering with evidence in the Montgomery County Court of Common Pleas. *State v. Arnold*, No. 2006 CR 04783 (Montgomery Cnty. Ct. Com. Pl. July 18, 2007). (Doc. 6-2, PAGEID 61-64). Arnold is serving twenty-five years to life imprisonment in Respondent's custody. (*See id.*) Proceeding *pro se*, Arnold pleads three grounds for relief:

> **GROUND ONE**: Petitioner was denied his constitutional rights to due process and a fair trial when the trial court denied Petitioner's motion to suppress evidence as Petitioner was seized pursuant to case law when he was placed in the back seat of the police cruiser and the officer admitted on the stand that he did not have probable cause to believe a crime had been committed[.]
>
> **Supporting facts**: The trial court committed prejudicial error when it overruled Petitioner's motion to suppress evidence, because the evidence before the Court, at the time, clearly showed that Petitioner was seized for purposes of the Fourth Amendment because he was frisked, placed in handcuffs, and ordered to sit and

remain in the back seat of a police cruiser. This seizure constituted an unlawful arrest because it was conducted without the requisite probable cause. It was an arrest because reasonable person in that situation would have understood that he was restrained in a manner consistent with an arrest. Even if this was not an arrest, the Officer, Tipton, lacked the requisite reasonable articulable suspicion that Petitioner had either committed a crime, or that he was about to commit a crime, that was necessary to detain Petitioner while Officer Tipton conducted an investigatory stop. Because Petitioner was unlawfully detained/arrested, any evidence that flowed from the event should have been suppressed.

**GROUND TWO**: Petitioner was denied his constitutional rights to due process and protection against cruel and unusual punishment when the trial court sentenced Petitioner to serve the sentence for his Murder conviction consecutive to the sentences for the other convictions when it was clear Petitioner was remorseful[.]

**Supporting facts**: The evidence at the sentencing hearing portrayed Petitioner as a man who was deeply regretful for his actions. He showed considerable remorse; apologizing to the victim's sister. There was nothing in the recorc [sic] that necessitated the elevation of Petitioner's sentence. The evidence demonstrated that the victim was the cause of the action that led to the circumstance; that the victim was the aggressor in the action, and that Petitioner was acting in self-defense when he shot the victim[.]

**GROUND THREE**: Petitioner was denied his constitutional right to due process when the trial court entered a judgment of conviction against Petitioner when the evidence was insufficient to sustain the convictions of two counts of Murder, two counts of Felonious Assault, Improper Discharge of a Firearm, and Tampering With Evidence[.]

**Supporting facts**: Petitioner contends that his Murder conviction is based upon insufficient evidence. Petitioner asserts that he was acting in self-defense when he shot the victim; thus negating all of the charges against Petitioner, with the exception of the Having a Weapon While Under Disability charge. Further, the evidence in this case clearly supports Petitioner's affirmative defense of self-defense.

(Pet., Doc. 2.)

## I. Procedural History

In November 2006, Arnold was indicted on seven counts. (Indictment, Doc. 6-2, PAGEID 49-52.) After the trial court denied Arnold's motion to suppress, *State v. Arnold*, No. 2006 CR 04783 (Montgomery Cnty. Ct. Com. Pl. May 30, 2007) (Doc. 6-2, PAGEID 59), the case was tried

to a jury, which, on June 6, 2007, found Arnold guilty on all seven counts. *State v. Arnold*, C.A. No. 22394 (Ohio Ct. App. 2d Dist. Nov. 21, 2008). (Doc. 6-2, PAGEID 136.) On July 18, 2007, the trial court sentenced Arnold to twenty-five years to life imprisonment. (Termination Entry, Doc. 6-2, PAGEID 61-64.)

### A. Direct Appeal

On September 18, 2007, Arnold, *pro se*, moved to file a delayed appeal, (Motion, Doc. 6-2, PAGEID 65-69), which the Court of Appeals granted and appointed counsel to represent him on appeal. *State v. Arnold*, No. CA 22394 (Ohio Ct. App. 2d Dist. Dec. 20, 2007). (Doc. 6-2, PAGEID 70-71.) Arnold raised the following assignments of error in his appellate brief:

> I. The trial court committed prejudicial error when it overruled the Appellant's Motion to Suppress Evidence as he was clearly seized pursuant to case law when he was placed in the back of the police cruiser, and the officer admitted on the stand that he did not have probable cause to believe a crime had been committed.
>
> II. The jury's verdict convicting Appellant of two counts of murder, two counts of felonious assault, improper discharge of a firearm, and tampering with evidence was against the manifest weight of the evidence.
>
> III. The trial court abused its discretion when it sentenced Mr. Arnold to serve the sentence for his murder conviction consecutive to the sentences for the other convictions when it was clear that he was remorseful.

(Appellant's Br., Doc. 6-2, PAGEID 73-74) (capitalization altered). The Court of Appeals overruled the assignments of error, affirming Arnold's conviction and sentence. *State v. Arnold*, C.A. No. 22394 (Ohio Ct. App. 2d Dist. Nov. 21, 2008). (Doc. 6-2, PAGEID 136.)

On February 4, 2009, Arnold, proceeding *pro se*, filed a motion for a delayed appeal in the Ohio Supreme Court, (Motion, Doc. 6-2, PAGEID 100-04), but the Ohio Supreme Court denied his motion and dismissed the case. *State v. Arnold*, No. 2009-0262 (Ohio Mar. 25, 2009). (Doc. 6-2,

PAGEID164.)

### B. Application to Re-Open Direct Appeal

On February 13, 2009, Arnold filed an application to re-open his direct appeal, pursuant to Ohio R. App. P. 26(B)**,** asserting an ineffective assistance of appellate counsel based on his counsel's failure to raise an insufficiency of the evidence claim on appeal. (Appl., Doc. 6-2, PAGEID 165-71.) The Court of Appeals denied Arnold's 26(B) application on May 18, 2009. Arnold did not appeal the denial of his 26(B) application to the Ohio Supreme Court.

### II. Analysis

### A. Ground One

In Ground One, Arnold asserts that his due process rights were violated when the trial court admitted evidence that was seized in violation of the Fourth Amendment. The State contends that Ground One is procedurally defaulted because Arnold failed to timely appeal the judgment of the Court of Appeals to the Ohio Supreme Court.

To determine whether a claim is precluded from *habea*s review under the procedural default doctrine, a court must apply the three-part test established in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986):

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . .

*Eley v. Bagley*, 604 F.3d 958, 964-65 (6th Cir. 2010) (citation omitted). If the claim has been procedurally defaulted, then Arnold can be excused only if he demonstrates "that there was 'cause' for him to not follow the procedural rule and that he was actually prejudiced by the alleged

constitutional error." *Maupin*, 785 F.2d at 138.

Here, although Arnold raised Ground One on appeal to the Court of Appeals, his claim is procedurally barred because he failed to appeal to the Ohio Supreme Court within forty-five days of the Court of Appeals' decision, in violation of Ohio Supreme Court Rule 2.2(A), and the Ohio Supreme Court denied his motion for delayed appeal. *State v. Arnold*, No. 2009-0262 (Ohio Mar. 25, 2009). (Doc. 6-2, PAGEID164.) The Ohio Supreme Court's denial of a motion for delayed appeal procedurally bars a claim from federal *habeas* review. *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004) (*per curiam*). Further, the claim is procedurally barred even if, as in this case, the Ohio Supreme Court did not explain why it denied the motion because it is assumed that the court enforced the procedural bar. *Id.*

Therefore, Ground One is procedurally barred unless Arnold "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A *habeas* petitioner must "show that some objective factor external to the defense" caused his failure to comply with the state's procedural rule, *Murray v. Carrier*, 477 U.S. 478, 488 (1986), and if the petitioner fails to do so, the Court need not consider the prejudice prong. *Smith v. Murray*, 477 U.S. 527, 533-34 (1986).

In his motion for a delayed appeal, Arnold alleged several reasons for missing the forty-five deadline: (1) his appellate counsel did not inform him of the deadline; (2) he did not have access to the law library to determine there was a deadline; and (3) he did not receive the Court of Appeals'

opinion until December 31, 2008, leaving him only five days to timely file the appeal.[1] (Motion, Doc. 6-2, PAGEID 100-04.) The first two reasons do not constitute sufficient cause to overcome his procedural default. Because Arnold had no constitutional right to counsel on discretionary appeal to the Ohio Supreme Court, his counsel's failure to alert him of the deadline does not excuse his procedural default. *See Coleman*, 501 U.S. at 755-57 (1991). Further, it appears that Arnold was aware of the deadline because he simultaneously filed a motion for delayed appeal, referencing the forty-five day deadline, with the notice of appeal. (Motion, Doc. 6-2, PAGEID 100-04.) In any event, Arnold's "ignorance of the law and procedural requirements for filing a timely notice of appeal is insufficient to establish cause to excuse his procedural default." *Bonilla,* 370 F.3d at 498.

On the other hand, Arnold's claim -- that he did not receive the Court of Appeals' decision until forty days after it was issued -- assuming he is alleging that it was his appellate counsel's fault, constitutes sufficient cause to excuse his procedural default. In *Smith v. Ohio Department of Rehabilitation & Correction*, 463 F.3d 426, 432-35 (6th Cir. 2006), the Sixth Circuit held that it was ineffective assistance of counsel when appellate counsel failed to promptly notify his client of the Court of Appeals' adverse decision, thereby excusing the *habeas* petitioner's procedural default.

However, the *Smith* Court also recognized that a defendant must litigate the ineffective assistance of appellate counsel claim as required by state law first. 463 F.3d at 436 n. 7. Here, although Arnold filed an application to reopen his appeal under Ohio R. App. P. 26(B), the proper method of bringing an ineffective assistance of appellate counsel claim, he did not allege that his

---

[1] Arnold also alleges that the Ohio Supreme Court received the Notice of Appeal on January 7, 2009, two days after the forty-five deadline, but the Notice of Appeal is file-stamped on February 4, 2009, and Arnold even dated the Certificate of Service as February 2, 2009. (*See* Doc. 6-2, PAGEID 98-104.)

-6-

counsel was ineffective for failing to promptly notify him that the Court of Appeals affirmed his conviction. Instead, the sole error that Arnold raised was that his appellate counsel failed to bring a sufficiency of the evidence claim on appeal. Therefore, because Ohio does not allow successive applications to re-open an appeal under Ohio R. App. P. 26(B), *State v. Twyford*, 833 N.E.2d 289, 290 (Ohio 2005), Arnold has procedurally defaulted in presenting this claim to the Ohio courts and cannot present it here.[2]

Alternatively, as the State argues, Arnold cannot obtain *habeas* relief on Ground One because he was given a full and fair opportunity to litigate his Fourth Amendment claim in state court. *See Stone v. Powell*, 428 U.S. 465, 494-95 (1976). Under *Stone*, the district court first "must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a [F]ourth [A]mendment claim" and then evaluate whether the petitioner's presentation of the claim was frustrated due to a failure in the state mechanism. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982).  The Ohio Rules of Criminal Procedure and Appellate Procedure provide defendants with an adequate procedural mechanism to assert a Fourth Amendment claim. *Id.* Further, Arnold utilized his procedural opportunities by filing a pretrial motion to suppress, (Motion to Suppress, Doc. 6-2, PAGEID 55-58), and directly appealing the trial court's denial of his motion to suppress. (Appellant's Br., Doc. 6-2, PAGEID 85-91.) Arnold has not alleged that his ability to litigate was frustrated in any manner. Therefore, Ground One is barred under *Stone v. Powell* as well.

---

[2] Arnold has not demonstrated cause and prejudice to excuse his procedural default of the ineffective assistance of appellate claim. Presumably, Arnold was aware of the claim when he filed his application to re-open the appeal under Ohio R. App. P. 26(b) because he filed it on February 13, 2009, approximately ten days after he sent the motion for delayed appeal. In addition, Arnold has not demonstrated that a fundamental miscarriage of justice will occur if the Court does not consider his procedurally-defaulted claim. *See Murray*, 477 U.S. at 496.

Accordingly, Ground One should be dismissed.

### B.  Ground Two

In Ground Two, Arnold argues that the trial court's imposition of consecutive sentences violated his Eighth Amendment right to be free of cruel and unusual punishment.  Again, the State contends that this claim is procedurally defaulted on two grounds: (1) as in Ground One, Arnold failed to timely appeal the Court of Appeals' decision to the Ohio Supreme Court; and (2) the claim was not fairly presented to the state courts.  As discussed above, the Court finds that Arnold has procedurally defaulted on Ground Two because he failed to timely appeal to the Ohio Supreme Court and the Ohio Supreme Court denied his motion for delayed appeal.  *See Bonilla*, 370 F.3d at 497.

Alternatively, Arnold is procedurally barred from asserting Ground Two because he failed to fairly present the claim to the state courts.  To preserve a federal constitutional claim for *habeas* review, the legal and factual basis of the claim  must be "fairly presented" to the state courts so that they have an opportunity to remedy the alleged constitutional violation.  *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006).  Ordinarily, a federal claim is not "fairly presented" to a state court if that court must read beyond the filings to alert it such a claim.  *See Baldwin v. Reese*, 541 U.S. 27, 31-32 (2004). The following factors indicate that a federal constitutional claim was fairly presented to the state courts:

> (1) the petitioner phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; (2) the petitioner relied upon federal cases employing the constitutional  analysis in question; (3) the petitioner relied upon state cases employing the federal constitutional analysis in question; or (4) the petitioner alleged "facts well within the mainstream of [the pertinent] constitutional law."

*Hicks v. Straub*, 377 F.3d 538, 553 (6th Cir. 2004) (citation omitted).

-8-

Here, Arnold's federal constitutional claim was not fairly presented to the Court of Appeals. In addressing this claim in his appellate brief, Arnold's counsel did not mention the Constitution, the Eighth Amendment, or even terms implicating the Eighth Amendment, such as "cruel and unusual punishment." (*See* Doc. 6-2, PAGEID 92-93.) Likewise, the brief does not refer to any federal or state cases analyzing Eighth Amendment claims. (*See id.*) Finally, Arnold did not allege "facts well within the mainstream of [the pertinent] constitutional law." *Hicks*, 377 F.3d at 553 (citation omitted). (*See* Doc. 6-2, PAGEID 92-93.) Rather, Arnold challenged his sentence exclusively on the ground that it was an abuse of discretion. (*See id.*)

Even if Arnold's claim was not procedurally barred, Ground Two fails on the merits. A sentence within the statutory maximum generally does not constitute cruel and unusual punishment. *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000). Because the maximum penalty for murder is life imprisonment, Ohio Rev. Code § 2929(B), Arnold's sentence of twenty-five years to life imprisonment is within the statutory maximum and does not violate the Eighth Amendment. Therefore, Ground Two should be dismissed.

### C. Ground Three

In Ground Three, Arnold raises an insufficiency of the evidence argument. The State argues that this claim is procedurally barred, but for a different reason: Arnold never raised the claim on direct appeal. While it is true that, on direct appeal, Arnold only argued that his conviction was against the manifest weight of the evidence, (*see* Doc. 6-2, PAGEID 91-92, 97), Arnold's claim is not procedurally defaulted. Given the interrelationship between insufficiency of the evidence and manifest weight claims, a state court's finding -- that the verdict is not against the manifest weight of the evidence -- also implicitly holds that there was sufficient evidence for the verdict. *See Nash*

*v. Eberlin*, 258 F. App'x 761, 764-65 (6th Cir. 2007). *See also Bell v. Warden, Warren Corr. Inst.*, No. 3:11-cv-135, 2011 U.S. Dist. LEXIS 76320, at *18-19 (S.D. Ohio June 22, 2011) (Black, J.; Merz, M.J.).

Although the Court cannot review the manifest weight claim because it is purely a question of state law, it will review the insufficiency of the evidence claim, as it implicates the Due Process Clause. *Tibbs v. Florida*, 457 U.S. 31, 45 (1982). The Court of Appeals summarized the evidence at trial as follows:

> The incident which forms the basis for this appeal occurred on the evening of November 12, 2006, when Arnold shot the victim, Sherawn Younge, in front of Younge's girlfriend's house located at 1514 Hochwalt Avenue in Dayton, Ohio. Younge died later that night of the injuries he sustained as a result of the shooting. At trial, Arnold confessed to shooting Younge twice in the upper body; however, Arnold testified that he acted in self-defense when Younge purportedly threatened him with a gun.
>
> Immediately prior to the shooting, Younge picked up his girlfriend, Latosha Gladden, from work, and the two were returning to Gladden's house on Hochwalt Avenue. Younge was driving Gladden's vehicle, and she was sitting in the front passenger seat. Gladden testified that both she and Younge observed Arnold from the inside of the vehicle firing a a handgun behind them as they approached Gladden's residence.
>
> Younge parked the vehicle in front of Gladden's house, but before they could exit the vehicle, Arnold approached the driver's side and leaned in the open window. Gladden testified that Arnold said "what's up?" and before Younge could answer, Arnold shot him. As Younge opened the driver's side door and tried to get out of the vehicle, Arnold shot him again. Gladden testified that she exited the vehicle and ran across the street in an effort to elude Arnold, who had now turned his attention to her. Gladden was hiding behind a station wagon when her sister, Selena, appeared at the scene and yelled at Arnold to leave Gladden alone. Arnold left the scene and began quickly walking down the street.
>
> As he was attempting to leave the scene, Arnold was observed by Officer Raymond Dine walking in the opposite direction from the area in which the gunshots occurred. Officer Dine ordered Arnold to get on the ground. Arnold was initially uncooperative, but he eventually acquiesced to the officer's demands. In the meantime, Younge, who was critically injured, got back in Gladden's vehicle and

>attempted to drive himself to the hospital. Officer Aaron Fraley stopped the vehicle, and he and Officer Dine ordered Younge out at gunpoint. Younge exited the vehicle and collapsed in the middle of the street. While Younge lay waiting for paramedics to arrive, he told the officers that he had been shot by Arnold.
>
>While the officers' attention was diverted, Arnold threw his handgun on the roof of a nearby house, where it slid to the ground and was later recovered by the police with traces of Arnold's blood on it. Arnold also attempted to discard his remaining bullets on the ground immediately surrounding him. However, police officers recovered the bullets a short time later. Officer Jason Tipton observed Arnold standing up and ordered him back on the ground, but Officer Dine returned and told Officer Tipton to frisk Arnold and put him in the back of his cruiser.
>
>By this time, a crowd had converged on the area where Younge had been shot and now lay dying. After the paramedics arrived and the crowd was under control, Officer Tipton asked Arnold to provide some identification. Arnold told Officer Tipton his first name and social security number. Arnold also stated that he was not involved in the shooting, but Officer Tipton had already received information from Younge and other witnesses that Arnold was the perpetrator. Officer Tipton transported Arnold to the Safety Building where he was questioned further by Detective Doyle Burke and Sergeant Gary White. After executing a written waiver of his *Miranda* rights, Arnold acknowledged that he and Younge were longtime friends, but he persisted in denying any involvement in Younge's murder.
>
>At trial, however, Arnold testified that he shot Younge in self-defense when Arnold was walking to his cousin's house on the evening of November 12, 2006. Arnold testified that when he walked by Gladden's house on Hochwalt Avenue, Younge exited Gladden's vehicle and threatened Arnold with a handgun. After a heated exchange, Arnold drew his gun and shot Younge twice before Younge could shoot him. Police did not find a handgun in Younge's possession or in the vehicle he was driving.

*State v. Arnold*, 2008-Ohio-6031, 2008 Ohio App. LEXIS 5065, at \*2-6 (Ohio Ct. App. 2d Dist. Nov. 21, 2008). (Doc. 6-2, PAGEID 135-45.) Because Arnold has not presented clear and convincing evidence rebutting the state court's factual findings, the Court will presume that the court's factual determinations are accurate. 28 U.S.C. § 2254(e)(1). In denying Arnold's claim that his conviction was against the manifest weight of the evidence, the Court of Appeals wrote:

>In his second assignment, Arnold argues that his convictions for murder,

-11-

felonious assault, improper discharge of a firearm, and tampering with evidence are against the manifest weight of the evidence. Arnold asserts that the manifest weight of the evidence clearly demonstrated that he acted in self-defense when he shot Younge on the evening of November 12, 2006. Thus, Arnold argues that his all of his convictions, with the exception of having a weapon while under disability, should be reversed.

A claim that a jury verdict is against the manifest weight of the evidence involves the following test: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. McKnight*, 107 Ohio St.3d 101, 112, 837 N.E.2d 315, 2005 Ohio 6046.

The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass* (1967), 10 Ohio St.2d 230, 231, 227 N.E.2d 212. "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson* (Aug. 22, 1997), Montgomery App. No. 16288, 1997 Ohio App. LEXIS 3709.

This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley* (Oct. 24, 1997), Champaign App. No. 97-CA-03, 1997 Ohio App. LEXIS 4873. We conclude that Arnold's conviction is not against the manifest weight of the evidence. The credibility of the witnesses and the weight to be given their testimony are matters for the jury to resolve. Arnold presented only minimal evidence in the form of his own testimony that he acted in self-defense. The jury did not lose its way simply because it chose to believe the State's witnesses, including the eyewitness testimony of Latosha Gladden, Younge's girlfriend, who was in the vehicle with Younge when Arnold shot him. It should be noted that although Arnold testified that Younge threatened him with a gun, no weapon was ever found on Younge's person or in the vehicle in which he was traveling. In fact, the only weapon recovered from the scene was the .38 caliber revolver Arnold used to shoot Younge. Having reviewed the entire record, we cannot clearly find that the evidence weighs heavily against a conviction, or that a manifest

miscarriage of justice has occurred.

*Id.* at *11-14.

The Supreme Court, in *Jackson v. Virginia*, established the test for evaluating whether a conviction is supported by sufficient evidence to satisfy the Fourteenth Amendment:

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

443 U.S. 307, 319 (1979).

Although the Court of Appeals did not explicitly apply the *Jackson* standard, its decision is still entitled to deference as long as the result is not an objectively unreasonable application of *Jackson*. *See Harrington v. Richter*, __ U.S. __,131 S. Ct. 770, 784 (2011). Applying that standard, the evidence recited by the Court of Appeals was clearly sufficient to support Arnold's conviction. Because Arnold admitted that he shot the victim at trial, he only challenges the sufficiency of the evidence to convict him in light of evidence that he acted in self-defense. Under Ohio law, the criminal defendant bears the burden of proving self-defense. Ohio Rev. Code § 2901.05(A). There was more than sufficient evidence to support the jury's determination that Arnold failed to prove that he was acting in self-defense. The only evidence that he presented was his own testimony, which was substantially contradicted by the State's evidence -- including the testimony of multiple eyewitnesses, who rejected Arnold's account of events; and testimony by the police, that a gun was never found a gun on the victim or in his vehicle. Therefore, Ground Three should be dismissed.

## IV. RECOMMENDATION

It is therefore **RECOMMENDED** that Arnold's §2254 petition for a writ of *habeas corpus* be denied with prejudice and this case be terminated upon the Court's docket

September 28, 2011              s/ **Michael J. Newman**
                                  United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6thCir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).